IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| CHRISTOPHER JOSEPH SELLARI, | ) |
| | ) |
| Plaintiff, | ) |
| | ) Civil Action No. 24-1581 |
| v. | ) |
| | ) |
| FRANK BISIGNANO,[1] | ) |
| COMMISSIONER OF SOCIAL SECURITY, | ) |
| | ) |
| Defendant, | ) |

MEMORANDUM OPINION

I.   INTRODUCTION

Pending before the court is an appeal from the final decision of the Commissioner of Social Security ("Commissioner" or "defendant") denying the claim of Christopher Joseph Sellari ("plaintiff") for disability insurance benefits ("DIB") under Title II of the Social Security Act ("SSA"), 42 U.S.C. §§ 405(g), 1383(c)(3).  Plaintiff, filing *pro se*, contends the Administrative Law Judge ("ALJ") improperly failed to a) account for the effects of plaintiff's severe post traumatic stress disorder ("PTSD") on plaintiff's ability to work; b) give the appropriate weight to plaintiff's alcohol dependence and use of Xanax for his anxiety, which impact plaintiff's residual functional capacity ("RFC") and ability to conduct gainful employment; and c) find the impact of plaintiff's polycythemia condition as severe.

Plaintiff asserts that the ALJ's decision is not supported by substantial evidence and should be reversed.  Alluded to in plaintiff's letter to the court, the court takes notice that it is

---

1. Frank Bisignano became the Commissioner of Social on May 7, 2025, and is automatically substituted for as a party in this case pursuant to Fed. R. Civ. P. 25(d). No further action is required due to the last sentence of § 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

plaintiff's contention that the case should be remanded for the ALJ to consider properly all the evidence of record, including plaintiff's self-described conditions and the findings of the Department of Veterans Affairs ("VA") to account for plaintiff's impairments from PTSD in calculating plaintiff's RFC. The Commissioner asserts that the ALJ's decision is supported by substantial evidence and the Commissioner's decision should be affirmed.

Plaintiff filed a letter addressed to the Appeals Council that court accepted as plaintiff's motion and brief in support of a motion for summary judgment pursuant to Rule 56(c) of the Federal Rules of Civil Procedure. (ECF No. 14.) The Commissioner filed a brief in support to of a motion for summary judgment, although no motion for summary judgment was filed. (ECF No. 20.) To the extent that the brief is itself considered a motion for summary judgment, it will be addressed as such by the court. The court, for the reasons set forth below, will deny plaintiff's motion for summary judgment and defendant's motion for summary judgment filed as a brief (ECF Nos. 14, 20) and will remand this case to the Commissioner for proceedings consistent with this opinion.

## II.   PROCEDURAL HISTORY

On January 20, 2022, plaintiff protectively filed the current Title II application for DIB, with an alleged disability date of October 29, 2021. (R. at 22.) The claim was initially denied on April 20, 2022, and again upon reconsideration, on December 20, 2022. (Id.) On December 27, 2022, plaintiff requested a hearing, which was conducted by telephone before the ALJ on September 11, 2023. (Id.) Plaintiff agreed to appear by telephone and testified at the hearing.

2

(Id.)   Plaintiff was represented by an attorney at the hearing. (Id.)   An impartial vocational expert also testified at the hearing. (Id.)

At the September 11, 2023, hearing, the ALJ reviewed the exhibits and documents in the record with plaintiff's attorney. (R. at 47-48.)   Plaintiff's attorney acknowledged and concurred with the exhibits in the record as submitted. (R. at 48.)   The ALJ stated: "Then, the record is complete." (Id.)   Following questions from the ALJ, plaintiff's attorney questioned plaintiff during the hearing about his physical and mental health conditions. (R. at 48-69.)

In a decision dated January 18, 2024, the ALJ determined that plaintiff met his burden at steps one, two and four of the sequential analysis.   The ALJ, at step five, found that based on plaintiff's age, education, work experience, and RFC, he was capable of performing jobs that exist in significant numbers in the national economy. (R. at. 35.)   Plaintiff was found to be "not disabled" within the meaning of the SSA under §§ 216(i) and 223(d) and denied DIB. (R. at 36.) Plaintiff timely requested a review of that determination and by letter dated September 11, 2024, the Appeals Council denied the request for review and the decision of the ALJ became the final decision of the Commissioner. (R. at 6-8.)   Plaintiff, having exhausted administrative remedies through the Social Security Administration, subsequently, without counsel, commenced this action by filing a complaint, which this court must liberally construe.   "As the Court unanimously held in Haines v. Kerner, 404 U.S. 519 (1972), a pro se complaint, 'however inartfully pleaded,' must be held to 'less stringent standards than formal pleadings drafted by lawyers.'" Estelle v. Gamble, 429 U.S. 97, 106 (1976) (quoting Haines v. Kerner, 404 U.S. 519, 520 (1972)); see Higgs v. Atty. Gen. of the U.S., 655 F.3d 333, 399 (3d Cir. 2011), as

amended (Sept. 19, 2011) ("The obligation to liberally construe a *pro se* litigant's pleadings is well-established.").

### III.     LEGAL STANDARD OF REVIEW

Judicial review of the Commissioner's final decision denying a claimant's application for benefits is provided by federal law. 42 U.S.C. § 405(g).   The judicial review of a final decision is plenary with respect to questions of law. Schaudeck v. Comm'r Soc. Sec., 181 F.3d 429, 431 (3d Cir. 1999).   With respect to factual findings, this court must determine whether there is substantial evidence which supports the findings of the Commissioner.   "Substantial evidence is 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate.'" Ventura v. Shalala, 55 F.3d 900, 901 (3d Cir. 1995) (quoting Richardson v. Perales, 402 U.S. 389 (1971)).   The deferential standard has been referred to as "less than a preponderance of evidence but more than a scintilla." Burns v. Burhart, 312 F.3d 113, 118 (3d Cir. 2002).

This standard, however, does not permit the court to substitute its own conclusion for that of the fact-finder. Id.; Fargnoli v. Massonari, 247 F.3d 34, 38 (3d Cir. 2001) (reviewing whether the administrative law judge's findings "are supported by substantial evidence" regardless whether the court would have differently decided the factual inquiry).   The court will not affirm a determination by substituting what it considers to be a proper basis even if it might have reached a different conclusion. Sec. & Exch. Comm'n v. Chenery Corp., 332 U.S. 194, 196-7 (1947).   "The reviewing court, however, does have a duty to review the evidence in its totality." Schonewolf v. Callahan, 972 F. Supp. 277, 284 (D.N.J. 1997) (citing Daring v. Heckler, 727

F.2d 64, 70 (3d Cir.1984)).  "As a part of this review, 'a court must 'take into account whatever in the record fairly detracts from its weight.'" Id. (citing Willbanks v. Sec'y of Health & Hum. Servs., 847 F.2d 301, 303 (6th Cir.1988) (quoting Universal Camera Corp. v. NLRB, 340 U.S. 474, 488 (1951)).

IV.   **PLAINTIFF'S BACKGROUND AND MEDICAL EVIDENCE**

   A.   **Plaintiff**

Plaintiff was born on May 13, 1973, and was 48 years old, a "younger individual," at the time of his alleged disability onset in 2021, but his category changed to "closely approaching advanced age" by the time of the hearing. (R. at 34.)   Plaintiff is a college graduate. (R. at 223.) He is single, but lives with a girlfriend. (R. at 59.)   He is capable of driving, but claims he cannot go grocery shopping, do any housework, and his cooking ability is limited to fixing salads. (Id.)   Plaintiff has not had a full-time job in about three and a half years. (Pl.'s Br. ECF 14 at 1.)   His last job was in 2021 when he was working as a sheriff's deputy. (R. at 50.)   Since that time, he alleges, because of PTSD,[2] anxiety, and his alcohol dependence he has been unable to work. (Id.)   Plaintiff listed physical and mental conditions in his DIB application disability report. (R. at 221-251.)   Plaintiff has been prescribed alprazolam (Xanax) to treat his anxiety.

---

2.   "Posttraumatic stress disorder (PTSD) is a psychiatric condition that may occur in people who have experienced or witnessed a traumatic event or series of traumatic events. The individual often experience the event or events as emotionally or physically harmful or life-threatening. Examples include, but are not limited to, abuse (physical, sexual, emotional), natural disasters, serious accidents, terrorist acts, war/combat exposure, intimate partner violence, and medical illness. However, most individuals who experience traumas do not go on to develop PTSD." https://www.psychiatry.org/patients-families/ptsd/what-is-ptsd, last visited December 23, 2025.

(Pl.'s Br. ECF 14 at 1-2, R. at 245.)   Plaintiff's alcohol use is "excessive" and medical providers have expressed a concern about "current alcohol use with benzodiazepines," which Xanax is, and do "not recommend the two in combination." (R. at 791.)

### B. Plaintiff's Medical Records

#### 1. Veterans Affairs

Since plaintiff's discharge from the military in 2017, he receives "most of his care through the VA system." (R. at 264.)   Plaintiff's service-connected diagnoses that have resulted in rated disabilities through the VA include a "chronic adjustment disorder (PTSD), tinnitus, a thigh condition, and limited flexion of a knee." (R. at 395.)   Plaintiff has been regularly evaluated for chronic pain in his lower back, knees, right hip, right wrist, and left ankle. (R. at 412, 423.)[3]   He also has flare-ups of gout in his left ankle. (R. at 413, 421, 429, 459, 561.)   He has osteoarthritis of the right hip, resulting in partial hip replacement in 2015, and an acute medial meniscal tear in his right knee. (R. at 414.)   He has a history of blast exposure from 2013 and was involved in a parachute accident in 2012. (R. at 421.)   Plaintiff has hepatic steatosis, likely contributed to by his alcohol use. (R. at 449, 456.)

Nearly every appointment in plaintiff's VA medical record notes plaintiff's use, or over-use of alcohol. (R. at 413, 438, 446-468, 512-645 *passim*.)   Plaintiff was repeatedly offered a consult to the VA's Center for Treatment of Addictive Disorders, but routinely declined. (See e.g., R. at 458, 821, 1080.) Plaintiff has acknowledged the medical providers' concerns with his

---

3. Plaintiff's appeal does not contest the opinion of the ALJ relative to any previously claimed physical limitations, with the exception of polycythemia; accordingly, any physical impairments other than polycythemia need not be addressed in this opinion. See United States v. Dowdell, 70 F.4th 134, 139 (3d Cir. 2023) (affirming the district court's finding that an "argument had never been made, so it was waived").

levels of drinking and its impact on his anxiety, hepatic steatosis symptoms, and gout flares. (See e.g., R. at 422, 792, 1094.) When asked, he does not disclose the amount he is drinking, saying "more than I should," (R. at 578), and professes, "I don't want to drink anymore," (R. at 787), but acknowledges he "drink[s] to self medicate" for depressive symptoms. (R. at 1066.)  In April 2021, plaintiff was drinking daily, usually multiple drinks per day. (R. at 458.)  It was "a rough time for him because of the situation in Afghanistan and he [was] trying to get an interpreter out of there." (R. at 422.)  Although, when "his interpreter from Afghanistan arrived" in November 2022, he drank to celebrate, which he then worried would cause his upcoming lab work to show elevated liver function levels. (R. at 1136-37.)  Appointment notes from June 6, 2023, noting plaintiff in early alcohol remission states, "he realizes he needs to quit the alcohol. … He has had a long history of excessive alcohol use. He has episodes of abstinence followed usually by relapse." (R. at 1091-93.)  Plaintiff's disability information report from the VA shows he was assigned at 100 percent disabled for "other specified trauma or stressor related

disorder with prolonged adjustment disorder[4] and alcohol disorder, to include insomnia."[5]  (R. at 695.)

### 2. Community Based Care

Plaintiff maintains a primary care provider in the community through the University of Pittsburgh Medical Center ("UPMC") who provides his prescription for Xanax, to treat his anxiety. (R. at 264.)   Plaintiff had his hip replacement surgery through Allegheny General

---

4. **§ 4.130 Schedule of ratings—Mental disorders.**
The nomenclature employed in this portion of the rating schedule is based upon the American Psychiatric Association's Diagnostic and Statistical Manual of Mental Disorders, Fifth Edition (DSM-5) (see § 4.125 for availability information). Rating agencies must be thoroughly familiar with this manual to properly implement the directives in § 4.125 through § 4.129 and to apply the general rating formula for mental disorders in § 4.130. The schedule for rating for mental disorders is set forth as follows:

…

9411 Posttraumatic stress disorder

…

**GENERAL RATING FORMULA FOR MENTAL DISORDERS**

|  | Rating |
|---|---|
| Total occupational and social impairment, due to such symptoms as: gross impairment in thought processes or communication; persistent delusions or hallucinations; grossly inappropriate behavior; persistent danger of hurting self or others; intermittent inability to perform activities of daily living (including maintenance of minimal personal hygiene); disorientation to time or place; memory loss for names of close relatives, own occupation, or own name. | 100 |

38 CFR § 4.130.
5. This short remark is the only evidence submitted from the VA which shows the diagnosis which resulted in his 100 percent disability determination. As discussed below, the complete VA records supporting his 100 percent disability were not included in the record or reviewed by the ALJ.

Hospital. (R. at 225.)   Other community-based care is often referred services from the VA for specific treatment therapies, such as for podiatry to treat fungal nails, (R. at 397), massage therapy for chronic low back pain, (R. at 399-400), and cytology for chronic hematuria. (R. at 404.)   Plaintiff was treated at St. Clair Hospital for hypertension, polycythemia and EKG changes, but his VA providers determined this episode was likely brought on by use of testosterone DHEA. (R. at 547.)

Plaintiff has been advised by his VA providers that he should consider psychology support services for his alcohol dependance, but he reported having "outside behavioral health support in the community." (R. at 821.)   Plaintiff self-reported in a consultative mental status exam that he was in outpatient therapy treatment from 2009 to 2011 in Bridgewell, PA; in 2013 he had some therapy with the VA, and in 2022 he was seeing Dr. Wilson in Green Tree, PA. (R. at 741.)   Dr. Wilson's treatment notes indicate plaintiff presented with "sleep disturbance, difficulty concentrating, restlessness, lack of satisfaction with primary relationships, and excessive alcohol use." (R. at 841.)   Dr. Wilson diagnosed plaintiff with Generalized Anxiety Disorder (GAD) and reported treating plaintiff with "Cognitive Behavior Therapy (CBT) interventions" to correct plaintiff's "incorrect thoughts associated with depressed or anxious feelings" through "[p]sychoeducation that explains the brain and body connection and how it responds to trauma." (R. at 842.)   In 2023, plaintiff was being seen at Meredith Counseling and Consulting, LLC, for GAD and PTSD with treatment goals to increase coping skills, decrease alcohol consumption, and to "decrease how often anxiety impacts his ability to engage socially." (R. at 1018.)   Plaintiff, through CBT, decreased drinking, but could not maintain abstinence. Plaintiff "appeared[ed] to be in better spirits with his limited consumption; however, this does

9

not seem like something that will be maintained long-term due to other identified struggles (i.e., flashbacks, nightmares, anxiety – PTSD) unless he continues to explore and process why he has been using substances." (R. a 1021.)

### 3. Gina Lombardi, M.A., Consultative Mental Status Exam

On October 27, 2022, plaintiff reported to Gina Lombardi, M.A., for a one-time consultative mental status examination on Zoom. (R. at 740-751). Ms. Lombardi reviewed plaintiff's history of outpatient psychiatric therapy and his chronic and current physical medical conditions. (R. at 741.) She noted plaintiff's history in the Army Special Forces (Green Beret) and his "[e]xposure to trauma" and the "difficulty that he witnessed and did see over the years." (R. at 741-742.) Ms. Lombardi recorded plaintiff's reported history of traumatic brain injury and concussion, in addition to physical diagnoses of "Arthritis in hips and knees. Osteoarthritis. Right ankle torn ligament. Left ankle gout. Right wrist fracture. Back/spinal problems." (R. at 743.) She indicated plaintiff's insight, judgment, and prognosis were all "fair." (Id.) In a medical source statement, she indicated in the checkboxes that plaintiff had "marked" impairments in his "ability to understand, remember, and carry out instructions" for the areas of "Carry out complex instructions" and "The ability to make judgments on complex work-related decisions." (R. at 745.) She also indicated "marked" impairments for "Interact appropriately with supervisor(s). Interact appropriately with co-workers. [and] Respond appropriately to usual work situations and changes in a routine work setting." (R. at 746.) In the narrative section for "other capabilities … affected by the impairment," Ms. Lombardi filled in "Difficulty with focus for moderate tasks." (Id.)

### 4. State Agency Medical Consultants

10

Plaintiff's medical records were reviewed by state agency medical consultants for independent disability determination analysis and RFC to work. (R. at 81-101.)  Psychologist Dante Emmanuel Mancini, Ph.D., provided a mental health review of the file on April 8, 2022, (R. at 185), and Paul C. Fox, M.D., on April 20, 2022, noted findings about plaintiff's medical conditions. (R. at 86.)   On re-review, Timothy Michael Ostrich, Ph.D., on November 2, 2022, assessed plaintiff's mental health records, (R. at 94), and Edwin Malloy, M.D., reviewed other medical conditions on December 20, 2022. (R. at 98.)

In the initial review, the reviewer found plaintiff's osteoarthrosis disorders, substance addiction disorder (alcohol), and anxiety disorder to be severe. (R. at 84.)   With respect to mental health, the evaluation determined there was "insufficient evidence" to assess plaintiff's mental limitations because there was "no complete current mental status examination data in the available medical evidence." (R. at 85.)   Physically, there was also insufficient evidence "to fully assess the claimant's physical impairments, limitations, or response to treatment." (R. at 86.)   The report acknowledged plaintiff's claimed arthritis in knees and hips, but found his right hip was restored after "arthroplasty with no hardware abnormalities," and x-rays of the left hip were normal. (Id.)   Plaintiff was assessed to be able to occasionally lift fifty pounds and frequently lift twenty-five pounds and sit or stand about six hours of a normal eight-hour workday, with the caveat that the "assessment may overestimate the claimant's functional capacity." (Id.)   Based on the evidence, at the initial level, plaintiff was found to be "not disabled." (R. at 87.)

Upon reconsideration, there were additional plaintiff's medical records available for review. (R. at 93.)   "Treating provider records reference[d] diagnoses of alcohol dependence,

11

adjustment disorder, and anxiety disorder/GAD [general anxiety disorder]." (Id.)   Included in plaintiff's additional records considered was the consultative mental status examination by Ms. Lombardi which noted a "history of PTSD, unspecified depressive disorder, unspecified anxiety disorder, unspecified bipolar disorder provisional" and comment on plaintiff's self-report of "drinking socially; however treating provider evidence suggest this is an underestimate." (Id.) In the part of the report with respect to "Mental Limitation," assessing the four paragraph "B" domains of 1) understand, remember, or apply information; 2) interact with others; 3) concentrate, persist, or maintain pace; and 4) adapt or manage oneself, only domain 2 was assessed as a "moderate" limitation, with the others found to be mild. (Id.)   In the "Mental Residual Functional Capability" part, it was noted that of the eight subsets for paragraph B, domain 2, plaintiff was "not significantly limited" for six areas, but "moderately limited" in the areas of "ability to accept instructions and respond appropriately to criticism from supervisors," and "ability to get along with coworkers or peers without distracting them or exhibiting behavioral extremes." (R. at 99.)

Based on other evidence with respect to plaintiff's physical limitations, in the reconsideration report it was noted plaintiff was capable to occasionally lift twenty pounds and frequently lift ten pounds, and sit about six hours of a normal eight-hour workday or stand for four hours, based on the degenerative conditions noted for plaintiff's right knee. (R. at 95.) Based on this evidence, additional postural limitations were recommended for plaintiff's RFC, as well as for a right wrist ganglion like cyst and underlying arthritis, given that plaintiff is right hand dominant. (R. at 95-96.)   Of note, a functional information update provided by plaintiff by phone on June 15, 2022, indicated plaintiff was "limited in social activities due to significant

anxiety, social anxiety, and hypervigilance." (R. at 98.)   Related to plaintiff's alcohol dependence, the examiner commented:

> The claimant has a substance abuse disorder in addition to his/her other medically determinable impairments. These impairments produce disabling limitations that are interrelated and overlapping such that if he/she discontinues the substance abuse, residual limitations from his/her impairments will remain at a disabling level.

(Id.)   Upon consideration of the "seven strength factors of the physical RFC (lifting/carrying, standing, walking, sitting, pushing, and pulling)," plaintiff was determined to "demonstrate the maximum sustained work capability of the following: Sedentary" and an overall determination of "not disabled." (R. at 100.)

## V.   DISCUSSION

### A.   ALJ's Findings

Proceeding through the sequential evaluation process, the ALJ determined at step one that, despite "earnings [that] exceed[ed] the minimum amount required for consideration as substantial activity," plaintiff had not engaged in substantial activity since his claimed disability date, (R. at 24); at step two acknowledged plaintiff had severe impairments of "degenerative joint disease (DJD) of bilateral knees, arthropathy of the right wrist, and posttraumatic stress disorder (PTSD)," (R. at 25.); and at step three found that the plaintiff's combination of impairments did not meet the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1. (Id.)   Plaintiff's other diagnoses, such as alcohol dependance, steatosis – transaminases, gout, microhematuria, polycythemia, hypertension and anxiety were found to be non-severe. (Id.)   Plaintiff exhibited multiple moderate limitations, but none that rose to the

13

level of serious or extreme as required to satisfy the "paragraph B" criteria, and the record of his conditions did not satisfy the "paragraph C" criteria. (R. at 26.)

Prior to commencing step four, the ALJ determined plaintiff's RFC. During the hearing, the ALJ heard testimony from plaintiff regarding his physical and mental limitations. (R. at 51-52, 59-69.) The ALJ considered plaintiff's medical records, to include the medical opinions and state administrative medical reviews, and found plaintiff's RFC as follows:

> [plaintiff] has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except lifting up to twenty pounds occasionally and ten pounds frequently; standing and walking for six hours and sitting up to six hours in an eight hour workday, with normal breaks; never climb ladders ropes and scaffolds; never crawl; occasionally kneel and crouch and frequently climb ramps and stairs, and balance and stoop; this individual is able to understand, remember and carry out verbal, written and demonstrated instructions; work related decisions would be limited to occasional; the work would be performed in a stable work environment where the work place and work process would remain generally the same from day to day; there would be no tandem work where fellow employees would rely upon the completion of a specific task by the claimant to complete the production process; occasional interaction with the public, supervisors and coworkers; and feeling, fingering, and handling would be frequent; pushing/pulling with the lower extremities would be occasional.

(R. at.27.) At step four, the ALJ determined that plaintiff could not perform his past relevant work. (R. at 34.)

With respect to the findings at step five, the ALJ posited a series of hypothetical questions to the VE to determine whether there was work plaintiff was capable of performing given his physical and mental limitations. Utilizing plaintiff's data as a younger individual, with at least a high school degree, his vocational history, and based on his earlier testimony at the hearing, the VE testified that there were a significant number of jobs available in the national economy at the light level that a hypothetical individual with an RFC like plaintiff would be capable of performing. (R. at 73.) The ALJ inquired whether he was employable if this

14

hypothetical individual were limited to stand and walk for only four hours throughout the workday.   The VE responded that limitation would eliminate those light category jobs because of "the restrictions on contact with the public and on tandem task," but sedentary unskilled occupations would exist. (R. at 73-74.)   Other hypotheticals were considered that eliminated the tandem task limitation and occasional interaction with others. (R. at 75.)   The ALJ concluded at step five that there were "jobs that exist in significant numbers in the national economy that [plaintiff] can perform…." (R. at 35.)

### B.   Alleged Errors

Plaintiff argues that the ALJ's decision was not supported by substantial evidence. Specifically, he argues that the ALJ improperly failed to consider how plaintiff's "alcohol dependance, anxiety, and polycythemia collectively prevent [him] from working." (Pl.'s Br. ECF No. 14 at 1.)   Plaintiff contends the ALJ did not give enough weight to the Xanax he is prescribed to treat his anxiety and PTSD, which prevents him from "being lucid and awake during the daytime," impacting his ability to work. (Id.)   "Because item 3 was not properly analyzed … the conclusions stated in item 4 … is also incorrect." (Pl.'s Br. ECF No. 14 at 2.) The court understands this to mean these factors should have figured greater into the determination of plaintiff's RFC.   Plaintiff contends that his alcohol dependance, relative to his PTSD, was not given the correct analysis and should have resulted in "at least two marked limitations." (Id.)

On appeal in response to defendant's motion for enlargement of time to answer the complaint, plaintiff, acting *pro se*, attached the summary of benefits letter (the "summary of benefits letter") he received from the VA, dated January 4, 2021, which included the rating

15

decision evaluation increasing his service-connected disability finding from thirty percent to 100 percent because of his "other other specified trauma or stressor related disorder with prolonged adjustment disorder and alcohol use disorder, to include insomnia." (ECF No. 7 at 3.)  Plaintiff's VA disability date was backdated to September 26, 2019, the effective date for plaintiff's service-connected disabilities. (ECF No. 7 at 2-3.)  The summary of benefits letter was not part of the record before the ALJ or the Appeals Council.

Most of the alleged errors need not be addressed because the ALJ failed to develop the record with respect to the bases for the VA's determination of 100 percent disability (R. at 695.) Of significance, while the ALJ found plaintiff's PTSD to be a severe medical impairment, and alcohol dependance and anxiety to be non-severe in step two of her analysis of plaintiff's limitations, (R. at 25), she failed to address the bases supporting the VA's determination to find plaintiff 100 percent disabled. (R. at 695.)  The ALJ's decision contained scant mention of plaintiff's history of PTSD, and no mention of how plaintiff's PTSD was likely related to anxiety and alcohol dependance.

PTSD is a significant component of the plaintiff's claim.  Plaintiff mentioned during the hearing that he "was disabled by the federal government … through the military" in "approximately 2020." (R. at 50.)  In plaintiff's disability information report from the VA, the reference, which shows he was assigned as 100 percent disabled in 2020, retroactive to 2019, is as follows:

> DISABILITY EVALUATION(S) INFORMATION (Most Recent to Least Recent): This report contains one to many disability evaluations for each listed disability.
>      Rating Decision Date(s):
>          Begin Date: 09/26/2019 05:00:00UTC End Date: Not Assigned
>      Evaluation Percent: 100

16

>    Diagnostic Text: <u>other specified trauma or stressor related disorder with prolonged adjustment disorder and alcohol disorder, to include insomnia</u>
>    Disability Bilateral Type(s) (Code-Name):
>       Not Assigned

(R. at 695) (emphasis added). As reflected in that quote, it is essentially a notation of the finding without details. On the other hand, the summary of benefits letter provides more significant details, including the existence of the following forms and physician statement:

- VA Form 21-096 Intent to File Claim for Compensation and/or Pension
- VA Form 21-526EZ Application for Disability Compensation and Related Compensation Benefits
- VA Form 21-0960 P-2 Mental Disorders (Other Than PTSD and Eating Disorders) Disability Benefits Questionnaire
- Physician's Statement of Dr. Amy Meyers

(ECF No. 7 at 4.)

The summary of benefits letter also includes a list of factors that resulted in plaintiff's disability rating increase from 30 percent to 100 percent because of his:

>    <u>REASONS FOR DECISION</u>
>    - <u>Persistent danger of hurting others</u>
>    - Depressed mood
>    - <u>Suicidal ideation</u>
>    - <u>Near-continuous depression affecting the ability to function independently, appropriately and effectively</u>
>    - <u>Impaired judgment</u>
>    - Mild memory loss
>    - <u>Impaired impulse control</u>
>    - Chronic sleep impairment
>    - <u>Difficulty adapting to work</u>
>    - Inability to establish and maintain effective relationships
>    - <u>Grossly inappropriate behavior</u>
>    - Disorientation to place
>    - Flattened affect
>    - Intermittent inability to perform maintenance of minimal personal hygiene
>    - <u>Difficulty in adapting to a worklike setting</u>
>    - Intermittent inability to perform activities of daily living

- Circumlocutory speech; Suspiciousness
- <u>Persistent danger of hurting self</u>
- Disturbances of motivation and mood
- Disorientation to time
- <u>Near-continuous panic affecting the ability to function independently, appropriately and effectively</u>
- Difficulty in understanding complex commands
- <u>Panic attacks more than once a week</u>
- Obsessional rituals which interfere with routine activities
- <u>Total occupational and social impairment</u>
- Difficulty in adapting to stressful circumstances
- Neglect of personal appearance and hygiene
- Circumstantial speech
- Anxiety
- Difficulty in establishing and maintaining effective work and social relationships

(<u>Id.</u>) (emphasis added). The ALJ, although informed about the VA's 100 percent disability determination, did not ask to review the pertinent records, such as the summary of benefits letter and supporting documentation.

Because "'Social Security proceedings are inquisitorial rather than adversarial,'" the "ALJ has a duty to develop the record further 'when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence.'" Carolyn A. Kubitschek & Jon C. Dubin, Social Security Disability: Law and Procedure in Federal Court 1055 (2025 ed., Thomson Reuters, 2025) (citing <u>Schiaffino v. Saul</u>, 799 F. App'x 473, 476 (9th Cir. 2020)) (quoting <u>Sims v. Apfel</u>, 530 U.S. 103, 110-11 (2000); <u>Mayes v. Massanari</u>, 276 F.3d 453, 459-60 (9th Cir. 2001)). The ALJ, therefore, had an "obligation [which] includes obtaining reports from the claimant's treating physicians and copies of medical records regarding the claimant. … This obligation, being statutory, exists whether or not the claimant is represented by counsel. … the ALJ must 'develop [the claimant's] complete medical history.'" (<u>Id.</u> at 1052 (citing 20 C.F.R.

18

§ 404.1512).); see Rutherford v. Barnhart, 399 F.3d 546, 557 (3d Cir. 2005) ("[T]he ALJ's obligation to develop the record … is equally applicable where lawyers are handling the case.").

The ALJ was on notice, through the record evidence and from plaintiff's testimony, that the VA had found plaintiff to be 100 percent disabled by, among other things, the other specified trauma or stressor disorder with prolonged adjustment disorder, (R. at 50, 695), but did not address the reasons for the VA's determination. "This indicates there is underlying documentation that was used to make disability determinations that was not included in the record despite its relevance." Fredy C. v. Comm'r of Soc. Sec., No. CV 24-10438, 2025 WL 2848574, at *7 (D.N.J. Oct. 8, 2025). "[T]he disability determinations of other government agencies themselves are not binding on the SSA," (Id. at *6), but "all of the supporting evidence underlying the other governmental agency or nongovernmental entity's decision" will be considered in a claim. 20 C.F.R. § 404.1504. The ALJ should have queried for plaintiff's VA Compensation and Pension ("C&P") determination report and records supporting the VA's 100 percent disability determination. Absent these documents the record supporting plaintiff's position with respect to the extent of his mental health limitations consists of some medical records and a one-time consultative mental status examination and medical source statement, which showed "marked" limitations. Because the ALJ knew about the 100 percent disability determination, but did not have supporting documentation for that determination, the record is ambiguous about the extent and severity of plaintiff's mental health limitations. Under these circumstances, this case must be remanded for proceedings consistent with this opinion. The ALJ needs to obtain the pertinent evidence from the VA supporting its 100 percent disability determination and may want to further develop the record by requesting updated state agency

19

mental health reviews to consider plaintiff's summary of benefits letter, the P&C determination report and relevant supporting documentation.

## VI.     CONCLUSION

Having reviewed the parties' motions and briefs, the record as a whole and the applicable law, the court finds there is sufficient reason to remand for the ALJ to develop the record with respect to plaintiff's mental health limitations by obtaining the complete VA records underlying the VA's 100 percent disability determination with respect to the severity of plaintiff's mental health conditions.

The court will deny plaintiff's motion for summary judgment (ECF No. 14).   To the extent that the brief in support for summary judgment is considered a motion for summary judgment by defendant Commissioner of Social Security, (ECF No. 20), it will be denied .   This case will be remanded to the Commissioner for further proceedings consistent with this opinion.

An appropriate order follows.

Dated: December 23, 2025                                                                 BY THE COURT:


                                                                                                          /s/ JOY FLOWERS CONTI
                                                                                                          Joy Flowers Conti
                                                                                                          Senior United States District Judge